GUARANTY TRUST CO. OF NEW YORK v. KOEHLER et al.

(Circuit Court, E. D. Missouri, E. D. February 2, 1911.)

No. 5,512.

1. GUARANTY (§ 4*)—REQUISITES—CONSTRUCTION OF INSTRUMENT.

An agreement between defendants and others by their agents as parties of the first part and plaintiff as party of the second part recited that plaintiff had made advances, and agreed to make further advances, to enable defendants to bid for certain property which was to be sold at judicial sale, and provided that a stated part of such advances should be secured by a mortgage on the property "to be acquired," and that when necessary powers of attorney were received the agreement should be supplemented by a formal mortgage; that the remainder of the sums advanced "shall be secured by the joint and several personal guaranty of said parties of the first part," and be paid in installments as therein specified. *Held*, that such instrument was not in itself a contract of guaranty, and would not support an action at law to recover from defendants the sums so agreed to be guaranteed.

[Ed. Note.—For other cases, see Guaranty, Dec. Dig. § 4.*]

2. GUARANTY (§ 18*)—REQUISITES AND VALIDITY—CO-GUARANTORS—NECESSITY THAT ALL SHOULD BE BOUND.

One of the parties to a contract of guaranty is not bound, unless all of the parties are bound who it was intended should be bound.

[Ed. Note.—For other cases, see Guaranty, Dec. Dig. § 18.*]

At Law. Action by the Guaranty Trust Company of New York against Hugo A. Koehler and others. Trial to court. Judgment for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Eliot, Chaplin, Blayney & Bedal and Davis, Stone & Auerbach, for plaintiff.

Reynolds & Harlan and Jones, Jones, Hocker & Davis, for defendants.

DYER, District Judge. On the 21st of October, 1907, the original petition was filed in this case. On the 20th of June, 1908, an amended petition was filed by leave. On the 12th of December, 1908, three of the defendants, to wit, the American Brewing Company, Hugo A. Koehler and Henry Koehler, Jr., filed their joint answer and counterclaim. On the 13th of January, 1909, the plaintiff filed its answer to the counterclaim of the defendants. On the 23d day of January, 1909, a stipulation was filed, signed by the respective attorneys for the respective parties to the suit waiving a jury and for an order of reference. By consent of parties the cause was referred to Jesse A. McDonald, as referee.

On October 27, 1910, the referee's report was filed, and on the same day exceptions to the report were also filed by defendants. On the 30th of November, 1910, the exceptions to the report of the referee were argued and submitted to the court.

The statement of the pleadings by the referee the court accepts and adopts. The pleadings as stated by the referee are as follows:

### Statement of the Pleadings.

The Guaranty Trust Company, a corporation organized under the laws of the state of New York with its principal office and place of business in the city of New York, filed its declaration on the 21st day of October, 1907, and its amended declaration on the 20th day of June, 1908, against Hugo A. Koehler, Henry Koehler, Jr., and the American Brewing Company, a corporation, all citizens of the state of Missouri; William Wolff, doing business under the name of William Wolff & Company; Frederick H. Hilbert, Charles H. Hilbert, and the Pacific Oriental Trading Company, a corporation, all resident in and citizens of the state of California. Only three of the defendants, to wit, Hugo A. Koehler, Henry Koehler, Jr., and the American Brewing Company, are before the court. The amended declaration contains three counts, all of which were relied upon at the trial.

The first count, for money had and received, states that plaintiff advanced moneys to the Philippine Lumber & Development Company, prior to June 14, 1905, and held a deed of trust on the company's property in the Philippine Islands to secure repayment; that proceedings were pending for a judicial sale of the property to satisfy the deed of trust; that the defendants as owners of the whole, or the greater part of the equity in the mortgaged property, formulated a plan to buy in the property at such sale and obtained the plaintiff's assent thereto and its promises to advance money to defendants to make the purchase; that such agreement between plaintiff and defendants was made in writing in the city of Manila in the Philippine Islands; that the sale was had on the 14th day of June, 1905, and the plaintiff, at the special instance and request of the defendants, advanced them about $62,500, with which the property was bought in for and on the defendants' account; that it was jointly and severally agreed on the part of the defendants that the advances made by plaintiff should bear interest at the rate of 7 per cent. per annum, and that upon defendants' purchase of the property a mortgage thereon would be executed to secure to plaintiff the repayment of $40,000 theretofore advanced by it, and to mature and be repaid in annual installments of $3,750 each, with interest thereon at the rate of 7 per cent. per annum; that defendants agreed jointly and severally to repay the plaintiff's additional advances, amounting to $22,500, in installments of $3,750 annually, with interest

187 F.—13

at 7 per cent. per annum, in equal monthly installments on the 14th day of each month; and that defendants agreed jointly and severally to pay interest on the said sum of $40,000, secured by mortgage unless such was otherwise paid when due; that the property of the Philippine Lumber & Development Company was sold, and in accordance with their agreement the defendants acquired the title thereto through their representatives and agents, Clarence H. Mitchell and Paul Reiss; that the defendants executed the mortgage to secure the $40,000, and interest thereon, and defaulted on the principal and interest payment due thereunder June 30, 1906; that default was likewise made by defendant in the payment of the installment of $3,750 of the unsecured sum of $22,500, which became due June 14, 1906, together with interest on the latter sum; that upon plaintiff's demand for payment of these sums, Hugo A. Koehler, Henry Koehler, Jr., and the American Brewing Company, expressly ratified the agreement made for them by their agents, as above recited, and the plaintiff, in consideration thereof, agreed to and did defer proceedings to collect any of the sums so due until January, 1907; that about the 14th day of January, 1907, Hugo A. Koehler, Henry Koehler, Jr., and the American Brewing Company paid plaintiff $7,500 to be applied in discharge of the two installments of principal so maturing June 14, 1906; that a $3,750 installment on the $22,500 unsecured became due on the 14th day of June, 1907, and has not been paid; that a $3,750 installment on the $40,000 secured by mortgage became due on the 30th day of June, 1907, and has not been paid; that interest installments in the sum of $364.58 each became due on the 14th day of each month from July, 1906, to January, 1907, both included, and interest installments in the sum of $320.83 each became due on the 14th day of each month from February to July, 1907, both included, for all of which sums, aggregating $13,320.29, the plaintiff asks for judgment.

The second count of the amended declaration states a case based on a guaranty by the defendants of the repayment of a part of the moneys referred to in the first count and payment of interest on the entire sum. It states: That an agreement in writing was entered into in the city of Manila, Philippine Islands, which was by plaintiff performed, and by the terms of which, in consideration of the assent by the plaintiff to the plan formulated by the defendants to buy the mortgaged property of the Philippine Lumber & Development Company, as averred in the first count, and the advances made by plaintiff and thereafter to be made by it on account of the defendants, to the amount of $62,500, the defendants guaranteed the repayment to the plaintiff of the sum of $22,500 of principal, with the interest accruing thereon, and also guaranteed the payment of the interest accruing on the remaining sum of $40,000 of principal so advanced by plaintiff, the $22,500 of principal to be paid in installments of $3,750 each on the 14th day of June, of each year, and the payment of interest on both said sums of $22,500 and $40,000 at the rate of 7 per cent. per annum to be made on the 14th day of each month from and after the 14th day of June, 1905. That the installment of $3,750 of the said sum of $22,500 becoming due on the 14th day of June, 1906, was not paid, and that no part of the interest that became due on or after the 14th day of June, 1906, on either the $22,500 or the $40,000, was paid. That, upon demand made for payment, defendants Hugo A. Koehler, Henry Koehler, Jr., and the American Brewing Company expressly ratified the respective individual agreements, made for them by their authorized representatives as aforesaid, and requested indulgences in the payment of the sum then due, and plaintiff agreed to and did defer proceedings for the collection of such sums till the 14th day of June, 1907, when the last-mentioned three defendants paid plaintiff the sum of $3,750 due on the $22,500 on the 14th day of June, 1906. That interest installments on such advances are due and unpaid from July 14, 1906. And that an installment amounting to $3,750 became due on said $22,500 on the 14th day of June, 1907, and remains unpaid. Judgment is asked on this account against the defendants jointly and severally for $3,750 with interest at 7 per cent. per annum from June 14, 1907; and for six monthly installments of $364.58 with interest at 7 per cent. per annum on each from maturity beginning with the maturity of the first on the 14th day of July, 1906; and for ten monthly installments of interest of $320.83 with interest at 7 per cent. per annum on each from maturity, beginning with the maturity of the first on the 14th day of January, 1907.

The third count is based on the guaranty referred to in the second count, covering only the sum of $22,500 and interest thereon. It states that, in consideration of the assent by the plaintiff to the plans formulated by the defendants to buy the mortgaged property mentioned in the first count, and the plaintiff's participation therein, and of the advances made and to be made by the plaintiff, aggregating $62,500 on account of defendants, and at the latter's instance and request, the defendants respectively guaranteed the repayment of $22,500 of principal so advanced, in installments of $3,750 annually on the 14th day of June, of each year, and interest at 7 per cent. per annum payable in equal monthly installments on the 14th day of each month until the whole was repaid; that plaintiff performed its part of the contract; that Hugo A. Koehler, Henry Koehler, Jr., and the American Brewing Company on the 14th day of January, 1907, paid the installments of $3,750 of principal that became due on the 14th day of January, 1906; and that no other part of said sum of $22,500 has been paid, and no part of the interest maturing after the 14th day of July, 1906, has been paid. Judgment is asked in this count against the defendants jointly and severally for $3,750 with interest thereon from June 14, 1907, at 7 per cent. per annum, and for six monthly interest installments of $131.25 with interest at 7 per cent. per annum from maturity, beginning with the maturity of the first on the 14th day of July, 1906; and for ten monthly interest installments of $109.37 with interest at 7 per cent. per annum from maturity, beginning with the first maturity on the 14th day of January, 1907.

The joint answer of Hugo A. Koehler, Henry Koehler, Jr., and the American Brewing Company filed on the 12th day of December, 1908, denies the contracts between plaintiff and defendants pleaded in each of the counts of the petition and all other allegations thereof, except corporate capacity; and by way of counterclaims states that those defendants on the 12th day of January, 1907, without any consideration therefor, deposited with the plaintiff in the name of Hugo A. Koehler the sum of $7,500, which the plaintiff agreed to repay on demand. Demand was made on the 10th day of July, 1907, and payment refused. The answer asks for judgment against the plaintiff for the deposit and 6 per cent. per annum interest thereon from the day of demand.

Plaintiff denies the allegations of the counterclaim.

A lengthy inquiry was had before the referee, and the questions of fact found by the referee and his actions in reference thereto will not be reviewed by this court. The facts found will be considered as final in the hearing before this court. Only the questions of law arising upon the facts as found by the referee will be considered by the court.

The referee was not only directed to find the facts, but also to report his conclusions of law for the consideration of the court in connection therewith.

The exceptions made to this report, so far as they apply to the law of the case, will be considered.

The conclusions of law reached by the referee, and made in his report, are as follows:

(1) That the plaintiff is not entitled to recover on the first count of its petition, and that judgment should be entered thereon in favor of the defendants, Hugo A. Koehler, Henry Koehler, Jr., and the American Brewing Company.

(2) That the agreement made on the 14th day of June, 1905, by and between Marshall and Reiss and Mitchell, on behalf of the plaintiff, and the defendants, is a contract of guaranty, which, if duly authorized, or its execution afterwards ratified by the defendants, makes them guarantors jointly and severally of the payment to plaintiff of $22,500 and interest on the full loan of $62,500 at the rate of 7 per cent. per annum.

(3) That the power of attorney given to Reiss by the brewing company, under date of the 10th day of July, 1903, did not authorize him to bind the brewing company as guarantor in the guaranty contract.

(4) That Reiss and Mitchell were not authorized to join the trading company as a guarantor in the guaranty contract, and that such joining of the trading company rendered the contract invalid as to the local defendants so far as its binding effect upon them is dependent upon the original authority given by them to their agents.

(5) That Reiss and Mitchell, as agents of the local defendants, were authorized to bind them, and each of them, with F. H. Hilbert and C. H. Hilbert and William Wolff, as guarantors, in a contract guaranteeing to plaintiff the payment of $22,500 with interest thereon from its maturity under the terms of the contract, and that the inclusion in the contract of a guaranty of interest from date on the entire loan of $62,500 was in excess of the agents' authority and not binding on the defendants unless they afterwards ratified the same, or estopped themselves from denying liability therefor.

(6) That the authority of Reiss and Mitchell to join the local defendants in the guaranty contract was not required to be in writing, signed by each of said defendants, and that Reiss and Mitchell were authorized to sign the names of all the local defendants with F. H. Hilbert, C. H. Hilbert, and William Wolff to a joint and several guaranty contract.

(7) That the knowledge possessed by Reiss of the contents of and parties to the guaranty contract was conclusively imputed to the local defendants when they employed him in July, August, and September, 1906, to represent them in dealing with the plaintiff and inducing it to extend the time of payment of sums then due under the contract until the defendants could sell the lumber company property.

(8) That, the local defendants having continued to handle and deal with the lumber company property for their interest and advantage for more than one year after having notice that the guaranty contract exceeded the authority given by them to their agents, they must be held chargeable with full knowledge of the contract and be bound by its terms as fully as if they had given express authority to their agents to execute it in the form in which it was written, and regardless of whether the other guarantors are bound thereby.

(9) That the local defendants, having received full information of the acts of Reiss and Mitchell on the 24th day of January, 1907, and for months thereafter continued to control and attempt to sell the property that had been purchased with the plaintiff's loan, and having remained silent and inactive toward the plaintiff from the time of receiving such full information until the 17th day of June, 1907, and then not having denied liability but suggested, in reply to the plaintiff's demand on them for payment, further delay on plaintiff's part to enable them to confer with Wolff and Hilbert about the payment of the sums then due under the guaranty, cannot thereafter dissent from the acts of their agents and deny liability under such guaranty contract.

(10) That the local defendants, in continuing to deal with the lumber company property, after obtaining full information of every material fact affecting their rights under the guaranty contract on the 24th day of January, 1907, and endeavoring to dispose of the same to their advantage, though that advantage be of the indirect kind disclosed by the facts herein, are precluded thereby from questioning their agents' authority, and therefore the guaranty of payment of $22,500 and interest payable monthly at the rate of 7 per cent. per annum on the total loan of $62,500, as provided in the guaranty contract, is binding upon those defendants, regardless of the liability of the other defendants therefor.

(11) That, under the facts found, the local defendants fully confirmed and ratified the acts of their agents in making the guaranty contract; and that such defendants are therefore liable to the plaintiff under the second count of its petition, regardless of the liability of the other defendants, and judgment should be rendered in favor of the plaintiff and against the local defendants under such count of the declaration.

(12) That the local defendants, having paid the $7,500 mentioned in their counterclaim to plaintiff in discharge of the two installments of principal due on the 14th day of June, 1906, on the plaintiff's loan of $62,500, the plaintiff is entitled to judgment on the local defendants' counterclaim.

(13) It will be inferred from the facts found herein that the plaintiff acted to its prejudice in extending time for payment from time to time, on the in-

ducement of the local defendants' promise to fulfill the guaranty contract, and therefore the local defendants are estopped to deny their liability under such contract, regardless of the liability of the other defendants.

I therefore recommend that judgment be entered in favor of the local defendants on the first and third counts of plaintiff's petition for their costs therein expended; and that judgment be entered in favor of the plaintiff and against the American Brewing Company, Hugo A. Koehler, and Henry Koehler, Jr., on the second count of its petition, for the sum of $3,750 on account of principal, and for the following sums with interest thereon at 6 per cent. per annum from the date specified in each instance, to wit, $364.58 with interest from August 14, 1906; $364.58 with interest from September 14, 1906; $364.58 with interest from October 14, 1906; $364.58 with interest from November 14, 1906; $364.58 with interest from December 14, 1906; $364.58 with interest from January 14, 1907; $320.83 with interest from February 14, 1907; $320.83 with interest from March 14, 1907; $320.83 with interest from April 14, 1907; $320.83 with interest from May 14, 1907; $320.83 with interest from June 14, 1907; $320.83 with interest from July 14, 1907; $320.83 with interest from August 14, 1907; $320.83 with interest from September 14, 1907; and $320.83 with interest from October 14, 1907, and for its costs therein expended; and that judgment be entered in favor of the plaintiff and against the local defendants on their counterclaim for its costs therein expended.

To these conclusions of law the defendants have filed their exceptions:

Under exception 5 the specifications therein are as follows:

(a) Because the language of the contract so far as it refers to a guaranty is in the future tense.

(b) Because the contract is not a contract of guaranty.

(c) Because the contract does not name or distinguish between the principal and guarantor.

(d) Because the contract fails to name or designate any person for whose debt, default, or miscarriage the persons named in the contract are to be charged.

(e) Because all the parties of the first part are made principals in the contract.

(f) Because the purpose of the contract of June 14, 1905, was merely to provide the money necessary to make the bid then required to be filed.

(g) Because it could not be known that any further advance would be required. Plainly, had the bid not been accepted, the deposit made was to be and would have been promptly returned to the plaintiff.

(h) Because the money was not paid until the 30th of June, 1905, after the bid of Reiss and Mitchell had been accepted.

(i) Because the contract as made was not performed by plaintiff.

(j) Because the contract cannot be held a guaranty by construction, due to the action of the parties from the day it was executed, because none of the defendants had knowledge of the contract prior to January 24, 1907.

The contract or agreement mentioned in this exception is as follows:

"This agreement made and entered into the 14th day of June, 1905, by and between William Wolff & Co. of San Francisco, California, represented in Manila by Clarence L. Mitchell, F. H. Hilbert and C. H. Hilbert, of San Francisco, California, represented by Paul Reiss, also the Pacific Oriental Trading Co., represented by Paul Reiss, the American Brewing Company, represented by Paul Reiss, and Henry Koehler, Jr., and Hugo A. Koehler, of St. Louis, Missouri, represented by Paul Reiss, parties of the first part, and the Guaranty Trust Company, a corporation, represented by N. S. Marshall, party of the second part, witnesseth:

"Whereas certain advances have been made by the Guaranty Trust Co. in connection with the property of the Philippine Lumber & Development Co., which advances now amount to ninety-seven thousand pesos, more or less, and

which amount the Guaranty Trust Company has agreed to extend up to the sum of one hundred and twenty-five thousand pesos, Philippine currency,

"Whereas, the Guaranty Trust Company has yet to advance the further sum of five thousand pesos, for the purpose of enabling the parties of the first part to make a bid, the proposed sale under order of the Court of First Instance of the City of Manila, said sale having reference to the property of the said Philippine Lumber & Development Company:

"Now, in consideration of said advances, it is agreed as follows, to wit:

"First. A formal mortgage shall be given upon the entire assets which may be acquired by the purchasers in connection with the receiver's sale above mentioned, said mortgage to be in favor of the Guaranty Trust Co., to secure it for its advances already made and hereafter to be made, as aforesaid.

"Second. The advances made and to be made by said Guaranty Trust Company shall draw interest, payable monthly at the rate of seven per cent. per annum, and shall be secured as follows: The amount of 80,000 pesos by a first mortgage on all the property to be acquired; all sums over and above the said amount of 80,000 pesos up to the maximum of 125,000 pesos with interest on the total indebtedness shall be secured by the joint and several personal guaranty of said parties of the first part.

"Third. Said advances are to be made repayable at the rate of P7,500 annually; firstly, to the account of 80,000 (eighty thousand) pesos already advanced, and P7,500 to the account of the personally guaranteed advance per annum.

"Fourth. That as soon as necessary powers of attorney arrive in Manila from the United States this agreement shall be supplemented by a formal mortgage which shall be prepared by the solicitors of the Guaranty Trust Company, the expenses for the preparation of said mortgage to be paid by the representatives of the Lumber Company, that is to say, the parties of the first part.

"Fifth. That in the event of the absence from Manila at any time of the representative of the Guaranty Trust Co. the latter shall be authorized to appoint as his substitute to act during his absence the manager for the time being of the International Banking Corporation of Manila.

"Sixth. It is further agreed that the said parties of the first part shall cause the plant, buildings, timber and other property hereinbefore referred to, to be kept fully insured by the owners thereof in good and solvent companies, and the policies so issued shall be assigned and delivered to the Guaranty Trust Company, and the amount of such insurance shall be fully maintained up to the present level of efficiency. The said policies, and also all tax receipts are to be deposited with the said Guaranty Trust Company or its representatives.

"Seventh. The Guaranty Trust Company by its proper representatives shall have the right at any time to inspect the property heretofore referred to, and also the books of the concern which shall manage said property during the existence of this indebtedness, in order that the said trust company may ascertain the manner in which the property is being managed.

"Eighth. The basis of the entire assets shall be determined by the inventory of the receiver authorized to make the same above referred to.

"In witness whereof, the said parties hereto have hereunto subscribed their hands and seals at the city of Manila, this fourteenth day of June, A. D. 1905.

"[Signed]    William Wolff & Co.,
                              "Per Clarence L. Mitchell.
                "F. H. Hilbert.
                "C. H. Hilbert.
                "Pacific Oriental Trading Co.
                "The American Brewing Co.
                "Henry Koehler, Jr.
                "Hugo A. Koehler,
                              "By Paul Reiss.
"For Guaranty Trust Co. of New York,
                "N. S. Marshall, Representative."

On the first and third counts of the plaintiff's petition the referee finds in favor of the defendants, and therein recommends judgment in their favor on those two counts.

No exceptions have been filed by the plaintiff's counsel to the action of the referee in so disposing of the first and third counts. It is therefore unnecessary for the court to discuss or consider in any wise the action of the referee in that behalf.

It is only with the second count of plaintiff's petition, based as it is upon the written contract above recited, that the court has to deal.

The referee in his report, at page 33, says:

"The agreement sued on (that is, the contract above recited) was declared by counsel for the local defendants not to be a contract of guaranty when they first denied liability to the plaintiff. That position was held by them at the trial. They assert that the instrument is merely an agreement to thereafter make a contract of guaranty, and therefore an action at law will not lie thereon. The words used they contend are not appropriate to constitute a guaranty in praesenti, but only to create an obligation to make a guaranty in the future."

The contentions made before the referee are embodied in the exceptions heretofore stated to the referee's report.

Another question raised here is this: Conceding for the time that the writing or contract above mentioned is a guaranty, are the defendants, the American Brewing Company and the two Koehlers liable, notwithstanding the fact that the other parties named in the paper as guarantors are by reason of cerain facts relieved from liability? The referee finds that as a matter of fact neither Reiss or Mitchell was authorized by the parties named as defendants to execute the paper which forms the basis of plaintiff's second count. It is claimed, however, that these particular defendants, subsequent to the execution of the contract, ratified the same, and that their action in that regard acts as an estoppel upon their part to now defend against the contract itself. The court, as already stated, will not review the facts upon which the referee bases his recommendation for judgment, but will deal only with the law arising upon the facts as found.

The two questions thus stated are the important legal questions arising from the facts ascertained by the referee.

[1] The referee finds that the contract of June 14, 1905, is a contract of guaranty. The defendants controvert this finding. The paper itself, without reference to other papers or to collateral facts, must determine the question. Subsequent ratification of an alleged contract is equivalent to previous authority given for its execution. Subsequent ratification of an alleged contract can have no more binding force upon the defendants than would the previous authorization to sign it. The question therefore in the judgment of the court depends upon the construction that must be placed upon this alleged contract of June 14, 1905, because the judgment recommended by the referee on the second count of the plaintiff's petition is bottomed on that particular contract.

On the same day that this contract (above recited) was signed and delivered, Paul Reiss wrote and delivered to N. S. Marshall, manager

of the International Banking Corporation at Manila, P. I., the following letter: .

"Manila, P. I., June 14, 1905.

"Mr. N. S. Marshall, Manager International Banking Corporation, Manila, P. I.—Dear Sir: Under and by virtue of the power of attorney from the American Brewing Co. of St. Louis, Mo., dated July 10th, 1903, filed for registration with your bank this forenoon, I hereby undertake for and in behalf of the said the American Brewing Co., and also for and in behalf of Mr. Henry Koehler, Jr., and H. A. Koehler, to guarantee the prompt execution of the documents necessary to give effect to the agreement made between yourself and the writer with respect to the acquisition by the writer on behalf of the stockholders of the Pacific Oriental Trading Co. of the assets and properties of the Philippine Lumber & Development Company; and I further guarantee for and on behalf of said Brewing Company and the said Messrs. Koehler that the guaranties to be signed by the said parties and Mr. Wolff and the Messrs. Hilbert will be promptly executed on arrival of proper power of attorney from the United States; and I further guarantee for and on behalf of the said brewing company and the said Messrs. Koehler that all sums of money advanced pending the arrival of such power of attorney will be repaid to your bank on demand. It being understood, however, that upon the execution of the guaranties and agreements contemplated by the understanding existing between yourself and the writer this guaranty will cease and be of no further effect.

"Very truly yours,                                           Paul Reiss."

This letter is introduced here for the purpose of throwing any light it may upon the contract above set out.

Whether it was written before or after the so-called contract of guaranty was signed is immaterial. It was at least written on the same day and may or may not throw some light on the contract itself and the understanding of the parties. While, as I have said, the question as to whether the writing called "a contract of guaranty," and upon which judgment must be rendered against the defendants the American Brewing Company and the two Koehlers if the recommendation of the referee prevails, must be determined from the paper itself, yet I deem it pertinent in considering the question to allow reference to be made to the letter of Reiss above quoted for the purpose of seeing whether it is in any wise helpful to the court to reach a just conclusion as to the contract itself.

The court has had much difficulty in reaching a conclusion in reference to the proper construction to be placed upon the paper called "contract of guaranty."

Counsel on either side have not only presented able oral arguments, but have furnished written arguments and citations of authorities which have been helpful and instructive to the court, and worthy of the well-known learning of counsel presenting them.

Webster defines "guaranty" as follows:

"In law and common usage: An undertaking to answer for the payment of some debt, or the performance of some contract or duty, of another, in case of the failure of such other to pay or perform; a guarantee; a warranty; a security.

"In law and common usage: To undertake or engage that another person shall perform (what he has stipulated); to undertake to be answerable for (the debt or default of another); to engage to answer for the performance of (some promise or duty by another) in case of a failure by the latter to perform; to undertake to secure (something) to another, as in the case of a contingency."

Mr. Story, in his work on Promissory Notes, § 457, defines "guaranty" as follows:

"A guaranty is an undertaking by one person to be answerable for the payment of some debt, or the due performance of some contract or duty, by another person, who himself remains liable to pay or perform the same."

Having these and other definitions of "guaranty" in mind, the court in that light must consider the writing in controversy.

The contract, after the recital of certain advances made and to be made by the plaintiff in connection with the property of the Philippine Lumber & Development Company, provides that, in consideration of those advances, William Wolff & Co., F. H. and C. H. Hilbert, the Pacific Oriental Trading Company, the American Brewing Company, Henry Koehler, Jr., and Hugo A. Koehler, would undertake to have a mortgage executed by the purchaser (at a contemplated sale) to secure the plaintiff for the said advances made and to be made to said lumber company.

It also provides that those advances *shall* be secured in a particular manner, to wit: the amount of 80,000 pesos by a first mortgage on all the property *to be acquired at a sale thereafter to take place,* and all sums over that amount up to 125,000 pesos, with interest on the whole amount, *"shall be secured* by the joint and several guaranties of the parties of the first part," to wit, Wolff & Co., the two Hilberts, Pacific Oriental Trading Company, the American Brewing Company, and the two Koehlers.

The paper further provided that, *when* the necessary powers of attorney arrived in Manila from the United States, that particular paper should be supplemented by a formal mortgage to be prepared by plaintiff's solicitor.

As to whether this paper is in fact (according to its terms) a present guaranty upon which judgment should be entered in favor of the plaintiff and against the defendants, the brewing company and the Messrs. Koehler, as recommended by the referee, is, as I have said, the primary and important question to be decided.

I have been loth to disagree with the well-considered report of the referee and the conclusions of law reached by him. My conclusions, however, do not agree with his, and I am compelled to say that in the opinion of the court the contract in suit is not a contract of guaranty.

It follows, therefore, that specifications (a), (b), (c), (d), and (e), as contained in exception 5 of the defendants' exceptions to the referee's report, must be sustained, and it will be so ordered.

[2] Another question hardly less important than the one just disposed of is now to be considered.

As heretofore seen, the referee finds that none of the alleged parties of the first part to the contract, to wit, Wolff & Co., F. H. Hilbert, C. H. Hilbert, Pacific Oriental Trading Company, the American Brewing Company, Henry Koehler, Jr., and Hugo A. Koehler, signed the contract or authorized any one to sign for them. The referee finds, however, that the American Brewing Company, Henry Koehler, Jr., and Hugo A. Koehler, after the same was signed by Reiss, ratified the same and thereby became bound to the plaintiff to pay the entire

amount advanced by the plaintiff over and above 80,000 pesos, together with the interest not only upon the difference between 80,000 and 125,000 pesos, but for the interest on the entire amount.

If the referee was right in finding that the contract was in law a "contract of guaranty," can these defendants, the brewing company and the Messrs. Koehler, be held as for a separate guaranty for the whole amount, when none of the other parties to that contract either authorized its execution or subsequently ratified it?

If a judgment is rendered against these defendants, they have no way of compelling a contribution from either Wolff & Co. or the two Hilberts, who neither authorized nor ratified the contract. If the three defendants now before the court ratified the contract, did they thereby release the other defendants from all obligation?

It seems to me that if these three defendants are to be held on an unauthorized contract, by a subsequent ratification of the same, then it should appear that not only they but all the other parties (who would have been bound by the contract had it been in the first instance authorized) ratified the same. Counsel for defendants, in my judgment, have very tersely stated the correct proposition, i. e., "that one of the parties is not bound unless all of the parties are bound who it was intended should be bound."

In this I find myself again in disagreement with the referee.

Defendants' exception No. 33, as follows:

"Exception No. 33. Defendants except to so much of the report of the referee as is contained in the eleventh conclusion of law on page 71 thereof, which reads as follows: '(11) That, under the facts found, the local defendants fully confirmed and ratified the acts of their agents in making the guaranty contract; and that such defendants are therefore liable to the plaintiff under the second count of the petition, regardless of the liability of the other defendants, and judgment should be rendered in favor of the plaintiff and against the local defendants, under such count of the declaration.' Because the conclusions of the referee that the defendants ratified the acts of their agents, and that they are liable on the second count of the petition, and that they are so liable, regardless of the liability of the other defendants, are erroneous conclusions of law"

—is sustained.

Whether plaintiff had a cause of action against the defendants for moneys had and received is, as I have said, not before the court. The referee found that the plaintiff had no such cause of action and found in favor of the defendants on that count of the petition. No exception having been made by the plaintiff to such finding, there is no such question to be now considered by the court, and his finding in that particular is affirmed.

The referee also found for the defendants on the third count of plaintiff's petition. There is no exception by the plaintiff to that finding, and it will therefore be affirmed.